CASE No. 822.

LAWRENCE v. GRAMBLING.

1. Objections not raised at the proper time cannot be considered on appeal.
2. A purchaser at sheriff's sale is not affected by irregularities in the execution under which he purchased, especially so in an action to try the title between the purchaser and the defendant in such execution.
3. The act of 1873 (15 *Stat.* 495), amends not only the sections of the code therein mentioned, but also other sections containing matter necessarily inconsistent with the amendments introduced by that act.
4. Since the act of 1873, an execution may be issued without leave at any time within three years after entry of judgment, and with leave upon motion at any time while the judgment remains unsatisfied.
5. If issued without leave after three years have expired, the execution is not void, but only voidable for irregularity.
6. The want of leave to issue may be supplied by proof of consent, and such consent may be presumed from the failure of defendant to move to have the execution set aside ; and a payment upon an execution irregularly issued is proof of actual assent.
7. A failure by the sheriff to levy on personalty before selling real estate, and defects in the advertisement of the land, do not affect, prejudicially, the purchaser's title.

Before ALDRICH, J., Spartanburg, March, 1879.

Action commenced February 23d, 1878, by Joseph Lawrence against Henry Grambling, for damages in trespassing upon land. By consent of parties an order was passed directing the issues to embrace the title to the premises as well as damages for the trespasses. Henry Grambling claimed title as the purchaser of the land in dispute at sheriff's sale, as the property of Lawrence. The sale was made under execution in the case of *James McMakin* v. *Joseph Lawrence,* judgment by confession in summary process, October, 1859. The petition was not signed nor sealed by the clerk, and there was no mark of entry or filing, but it was enrolled by the clerk, and the taxation of costs was approved and signed by him. The first execution upon this judgment was issued in November, 1859, a second in August, 1866, and a third in February, 1875. These two last executions were not issued

under proceedings by *scire facias* nor by leave of the court, but were issued and endorsed as *alias* executions. Under the one of latest date the land was levied upon, and in August, 1867, was sold to Bobo and Cleveland, who afterwards conveyed to the defendant. It was in proof that Lawrence had personal property more than enough to pay the executions. After the sale the plaintiff here paid to the sheriff the balance claimed to be due on the McMakin judgment. The sheriff's deed described the land as three hundred acres, more or less, the same said to be lots Nos. 7 and 8 of a survey made, &c.; this description of the land by lots did not appear in the advertisement.

The defendant's counsel requested the presiding judge to charge—

1. If judgment has been entered previous to the adoption of the code of procedure and execution issued thereon within five years and returned unsatisfied, an *alias* or *pluries* execution may issue at any time without application to the court, though five years have elapsed since the issuing of the last execution.

2. If the execution was active at the time of the adoption of the code, it may be renewed at any time afterwards without application to the court.

3. If the purchase by plaintiff was under an execution which, at the time of the sale, had lost its active energy, then the plaintiff's claim must fail, even if the defendant had shown no color of title, and the plaintiff must establish a clear title in himself.

4. That the payment by the plaintiff on the execution of McMakin after the sale by the sheriff to Bobo and Cleveland, was an acknowledgment that the execution was unsatisfied and validated the sale.

All of which request to charge his Honor, the presiding judge, refused.

At the request of the plaintiff's attorneys, the presiding judge then charged the jury—

1. That the execution should have commanded a levy on personalty, and the sheriff should have levied upon such personalty before levying upon and selling real estate.

2. In order to renew the execution under which the land was

sold, it was necessary to obtain the consent of Lawrence on the executions or an order of court.

3. If the jury believed that Lawrence did not give his consent, and no order of court was granted, then the sale under said execution conferred no title on Grambling.

He further charged that if the advertisement and deed do not describe the lands sold by the sheriff, they may be void for uncertainty.

To all of said charges the defendant's counsel excepted.

The jury found for plaintiff the land in dispute and $500 damages, and judgment was entered thereon, and defendant appealed.

*Mr. J. B. Cleveland,* for appellant.

The sheriff's deed, under which appellant holds, conveyed a good title. 9 *S. C.* 288; 33 *How. Pr.* 289. The case of *Pierce* v. *Crane,* 4 *How.* 256, is authority sufficient upon this point. The execution was ratified as binding by the payment made on it. What is the object of a renewal by *sci. fa. ?* It is to satisfy the court that its process is still unsatisfied. Payment is an acknowledgment. It can ratify a contract, renew a debt. Why not revive an execution? 11 *S. C.* 79. It was error to charge that a levy should have been made on personal property before levying upon real estate. 39 *Barb.* 396; 3 *Wait's Act. & Def.* 97; 12 *Rich.* 54; 2 *Bail.* 421.

*Mr. J. S. R. Thomson,* contra.

The execution sale under which appellant claims was void. (1.) Because the executions were renewed without authority of law. 15 *St.* 499, § 15. The renewal of an execution without the sanction of a statute, is impossible. *Freem. on Ex'ns,* § 66, note ; 27 *Ill.* 540. Section 307 of the code is repealed by act of 1873. *Sedg. on Stat.* 104–106, 365; 11 *Wall.* 88; 33 *Penna. St.* 511; 15 *Gray* 24. (2.) Because the execution does not describe the judgment. The judgment is for $46.30, with interest from October 28th, 1859; the execution was issued for $48.81, with interest from November 1st, 1859. *Freem. on Ex'ns,* § 42 ; 1 *Nev.* 413; 8 *Ired.* 221. (3.) Because the execution should

have commanded a levy on personalty. *Freem. on Ex'ns*, § 109. (4.) Because the levy was excessive. The land was worth $2000, and there were two lots, and the debt was less than $150. *Rorer on Jud. Sales*, §§ 398, 402, 586; *Kerr on Fr. & Mis.* 188; 19 *How.* 303; *Story's Eq.*, §§ 244, 246; 3 *Desaus.* 292. (5.) The judgment, as proved, will not support the sale of the land, being neither signed, sealed nor filed by the clerk. 2 *Mill C. R.* 248; 2 *Bro.* 186; 2 *Hill* 438.

The sheriff's deed is void for uncertainty, as it does not describe the land sold by the sheriff. *Freem. on Ex'ns*, § 330; *Rorer on Jud. Sales*, § 577. The payment afterwards made by Lawrence does not validate the sale. He really paid all the debt, and up to that time Bobo and Cleveland had not complied with their bid. 3 *Hill* 289; 4 *Strob.* 293; 2 *McC.* 264; 1 *Rich. Eq.* 351. If any of the judge's rulings were correct, and would sustain the verdict, other erroneous rulings would be immaterial. 3 *S. C.* 58; 5 *S. C.* 5; 9 *S. C.* 457; 10 *S. C.* 247.

March 1st, 1880. The opinion of the court was delivered by

WILLARD, C. J. This is an action of trespass, but the issues were framed by the consent of parties so as to raise the question whether the plaintiff or the defendant had title to the premises described in the complaint. The questions brought before us by the appeal depend upon the fact that the defendant claimed to have purchased the premises in question at sheriff's sale under a judgment recovered by one McMakin against the plaintiff. The regularity of the execution under which the defendant purchased is questioned. An objection was taken in argument that the judgment on which the execution was issued was not duly proved. It does not appear that any objection was made at the trial to the proof offered to establish this judgment, nor that the objection is raised in either the requests to charge or the charge as reported, and that objection cannot, for that reason, be considered on the present appeal.

The objections to the execution present, as a preliminary inquiry, the question, whether the plaintiff can dispute in this action the regularity of the execution under which the defendant purchased. It will be noticed that the plaintiff, in the pres-

ent case, was defendant in the execution under which the land was sold, and the present defendant was not a party thereto.

It is well settled that a purchaser at a sheriff's sale under a judgment cannot be prejudiced by irregularities in the issuing of the execution under which he purchased, where such irregularities do not, in their nature, render the execution void, but merely voidable. *Ingram* v. *Belk*, 2 *Strob.* 207. The reason of the rule is that such irregularities may be cured by consent or acquiescence on the part of the defendant in the execution or by amendment against such defendant; and if the defendant in the execution neglects to take advantage of such irregularities in a direct proceeding, neither he nor any one claiming under or through him shall make them available against the purchaser. *Williamson* v. *Farrow*, 1 *Bail.* 611. The reason of this rule has the strongest application where the defendant, who has neglected to take advantage of such irregularities in a direct proceeding to set aside the execution, is in possession of the land sold, and claims to hold it against the purchaser under such execution on the ground of the existence of such irregularities. Even third parties, who have no right to a direct proceeding to set aside the execution for irregularity, cannot take advantage of such irregularities as against the purchaser under such execution, (*Henry* v. *Ferguson*, 1 *Bail.*, 512; *Jackson* v. *Bartlett*, 8 *Johns. R.* 361,) much less can the defendant in the execution who has such a direct remedy avail himself of such irregularities in a collateral proceeding and against the purchaser.

It remains to be considered, then, whether the objections made by the plaintiff to the execution, allowing them their full force, tend to render the execution wholly void, or merely to show irregularities that are capable of being waived.

The objections to the execution under which the defendant purchased resolve themselves to the single proposition that such execution was not issued upon leave of the court obtained for that purpose, in accordance with the provisions of the code of procedure in force at the time of such issue. The validity of the execution in question, which was issued February 7th, 1875, must be tested by the provisions of the code as it stood under the amendatory act of 1873, (15 *Stat.* 495,) that amendatory act

having been held valid by this court in *Arnold* v. *McKellar*, 9 *S. C.* 335.

Section 306 of the code was left standing by the amendatory act of 1873, and was only affected by that act to the extent of changing the period of five years mentioned therein to three years. That section clearly displaced the provisions of the act of 1827, (6 *Stat.* 324,) so far as it related to the time within which execution could be issued without leave of the court obtained therefor. It is in terms made applicable to judgments recovered at any time prior to the code or subsequent thereto. It asssumes to modify writs of execution in conformity with the provisions of the code, and prescribes the time within which executions may be issued without leave of this court on all judgments then outstanding, as well as upon such as should be thereafter recovered. It must, therefore, be regarded as the proper rule of ascertaining the time within which an original execution may be issued, as, of course, on all judgments recovered before or after March 1st, 1870.

The act of 1873 does not, in express terms, amend Section 306, but it establishes a provision clearly conflicting with so much of that section as allows five years for the period of time after a judgment within which an execution can be issued without leave of the court first had. It provides (Section 15) " execution may issue upon any judgment or decree within three years from the entry thereof without any revival of the same." This provision must be regarded as amending Section 306 of the code by changing the period of five years into that of three years, for the following reasons : The act of 1873, Section 1, declares, "that the code of procedure, being Title V., Part III., of the General Statutes, be, and the same is hereby amended in the several sections thereof as is hereinafter provided." As the act goes on to name specific sections of the code for the purpose of amendment, the primary sense and understanding would be that only those sections named would be regarded as amended. But this sense may be enlarged in view of the fact that this act treats the code as a whole conformably to its real nature, which is that of a system of procedure. It is presumable that the legislature intended that the amendments should be construed, with the rest

of the code, so as to produce a harmonious construction of the whole. Such being the case, the declaration of the intent to amend "the several sections thereof" should be read as extending to all or any sections that contain any matter necessarily inconsistent with the amendments introduced by the act.

Section 307 of the code provides that after the lapse of five years leave to issue an execution must be obtained on motion, and prescribes the notice that must be given of such motion, and the evidence on which such leave may be granted. This section is not, in express terms, repealed or amended by the act of 1873; although, for the reasons already stated in respect of Section 306, it must be regarded as so far amended as to change the period of five years, stated in it, to three years.

The fifteenth section of the act of 1873 provides for the proper proceeding by which an execution that has lost its active energy may be renewed, but contains a provision conflicting with Section 307 of the code, which must be regarded as still prescribing the means of obtaining an original execution when more than three years have elapsed since the entry of judgment.

Neither the provisions of Sections 306 and 307 of the code, nor those of Section 15 of the act of 1873, prescribe any limit of time within which a motion for leave to issue an original execution, or to revive one whose active energy has expired, must be made; and it must be concluded that any party having a judgment at the adoption of the code or at any time since, can, on motion for leave, issue an execution, whatever might be the lapse of time since the entry of the judgment, provided it is not satisfied of record or by lapse of time. Whether the provisions of the act of 1827 did not interpose a limit beyond which such a motion could not be made need not be considered here, as its provisions were, in that respect, displaced by the unlimited provisions of the code. It follows, the judgment being regarded as unsatisfied, that the execution under which the defendant purchased was capable of being issued in 1875, in some form, either without application to the court, or upon such application. Assuming that it could only be issued upon such application, and no application for that purpose was in fact made, was the execution, for that reason void, or only voidable for irregularity?

It is very clear that the provisions introduced by the code and the act of 1873, as a substitute for the writ of *scire facias*, as theretofore used, should be construed as giving to the remedy provided as such substitute the same force and effect, when not otherwise provided, as the proceedings by *scire facias*. There is nothing in the provisions of the code as it originally stood, or as it now stands under the amendment of 1873, that fixes the consequences that should result from the failure of a party to obtain the leave of the court where such leave is necessary. We must then recur to the former practice to ascertain whether the failure to bring a *scire facias*, when necessary, rendered the execution issued without such proceeding absolutely void, or merely voidable on the ground of irregularity. This proposition was decided in *Ingram* v. *Belk*, 2 *Strob.* 207, where it is said that in such cases the execution is merely voidable and not void.

In *Guignard* v. *Glover, Harp.* 457, the want of a *scire facias* was supplied by proof that the defendant in the execution had assented to its issue. This conclusion does not exclude the idea that such consent could have been presumed from the mere fact that the defendant in the execution had taken no steps to set aside the execution, which is the principle that underlies the various cases that have been cited above. One of these cases, stating this doctrine broadly, is relied upon as authority in *Guignard* v. *Glover*, and that fact precludes the idea that the court in the last named case intended to limit the application of the rule to a case where there was proof of actual assent on the part of the defendant in the execution.

In the present case there is also proof of the actual assent, for it appears that after the sale of the land in suit a balance remained due upon the execution, which was paid in full by the present plaintiff, thus indicating his contentment with the execution as it stood.

The charge of the Circuit judge, in making the validity of the title of the defendant to depend upon the fact of the plaintiff's consent, was clearly erroneous. The charge was also erroneous in holding that failure to levy on personalty before selling the real estate, and defects in the advertisement of the land, could affect, prejudicially, the defendant's title. *Turner* v. *Mc-*

*Crea,* 1 *N. & McC.* 12. Under the view that has been presented it cannot become material to consider the propositions involved in the requests to charge, as they concern only questions of regularity that cannot affect the defendant's title.

There must be a new trial.

McIVER, A. J., concurred.